IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WILLIAM KEATON, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| vs. | § | Civil Action No. 5:17-cv-223 |
| | § | |
| SEDGWICK CLAIMS MANAGEMENT | § | |
| SERVICES, INC. AND CHARTER | § | |
| COMMUNICATIONS, INC. (f/k/a TIME | § | |
| WARNER CABLE, INC.), | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**


Christina Ponig
DLA PIPER LLP (US)
1000 Louisiana Street, Suite 2800
Houston, Texas 77002-5005
Tel: 713.425.8436
Fax: 713.300.6036

Raja Gaddipati (admitted *pro hac vice*)
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.236.7516

*Counsel for Defendant Charter
Communications, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

UNDISPUTED FACTS ........................................................................................2

SUMMARY JUDGMENT STANDARD ...............................................................7

ARGUMENT .......................................................................................................7

I.   THE COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF
     CHARTER ON COUNT I FOR DENIAL OF STD BENEFITS ....................7

     A.   Sedgwick's Denial of Keaton's Claim for STD Benefits Is Subject to
          Review Under an Abuse of Discretion Standard ...................................8

     B.   Sedgwick's Did Not Abuse its Discretion in Denying Keaton's Claim for
          STD Benefits ......................................................................................9

     C.   Sedgwick's Denial of Keaton's Claim for STD Benefits Must Be Upheld
          Even if the Court Applies De Novo Review .......................................13

II.  THE COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF
     CHARTER ON COUNT II FOR FAILURE TO PROVIDE PLAN
     DOCUMENTS ..........................................................................................14

     A.   Keaton's Document Claim Fails as a Matter of Law...........................14

     B.   Sedgwick Complied with Keaton's Document Requests......................16

     C.   Keaton Cannot Establish the Requisite Bad Faith or Prejudice Required
          for the Imposition of Statutory Penalties..........................................16

CONCLUSION...................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................................7

*Baker v. Metro. Life Ins. Co.*,
   364 F.3d 624 (5th Cir. 2004) ........................................................................................8, 9

*Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   215 F.3d 516 (5th Cir. 2000) ..........................................................................................13

*Brown v. J.B. Hunt Transp. Servs., Inc.*,
   586 F.3d 1079 (8th Cir. 2009) ........................................................................................15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................................7

*Chacko v. Sabre, Inc.*,
   No. 04-cv-886, 2005 WL 3636627 (N.D. Tex. Oct. 5, 2005), *aff'd*, 473 F.3d
   604 (5th Cir. 2006) ........................................................................................................17

*Chapman v. Prudential Life Ins. Co. of Am.*,
   267 F. Supp. 2d 569 (E.D. La. 2003) ......................................................................8, 9, 13

*Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*,
   221 F. Supp. 3d 853 (S.D. Tex. 2016) ............................................................................15

*Gooden v. Provident Life & Acc. Ins. Co.*,
   250 F.3d 329 (5th Cir. 2001) ....................................................................................10, 11

*Groves v. Modified Ret. Plan for Hourly Paid Employees of Johns Manville Corp.*
   *& Subsidiaries*,
   803 F.2d 109 (3d Cir. 1986) ............................................................................................15

*Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*,
   819 F.3d 42 (2d Cir. 2016) ..............................................................................................15

*Keller v. AT&T Disability Income Plan*,
   664 F. Supp. 2d 689 (W.D. Tex. 2009), *aff'd*, 481 F. App'x 86 (5th Cir. 2010).......... 8, 11, 12

*Kidder v. Aetna Life Ins. Co.*,
   No. 14-cv-665, 2016 WL 1241549 (W.D. Tex. Mar. 28, 2016).............................. 7, 8, 16, 17

*Lee v. ING Groep, N.V.*,
   829 F.3d 1158 (9th Cir. 2016) ........................................................................................15

*Letter v. Unumprovident Corp.*,
  428 F. App'x 319 (5th Cir. 2011) ........................................................................7

*Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ...........................................................................................7

*Medina v. Metro. Life Ins. Co.*,
  588 F.3d 41 (1st Cir. 2009)................................................................................15

*Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.*,
  168 F.3d 211 (5th Cir. 1999) .......................................................................7, 12

*Montes v. Phelps Dodge Indus., Inc.*,
  481 F. Supp. 2d 700 (W.D. Tex. 2006) ...............................................................7

*Stone v. Prudential Ins. Co. of Am.*,
  226 F. Supp. 2d 818 (W.D. La. 2002) ...............................................................13

*Sweatman v. Commercial Union Ins. Co.*,
  39 F.3d 594 (5th Cir. 1994) ..............................................................................12

*Thomason v. Metro. Life Ins. Co.*,
  165 F. Supp. 3d 512 (N.D. Tex. 2016), *aff'd*, No. 16-10634, 2017 WL
  3049528 (5th Cir. July 18, 2017) ......................................................................17

*VanderKlok v. Provident Life & Acc. Ins. Co.*,
  956 F.2d 610 (6th Cir. 1992) ............................................................................15

*Vega v. Nat'l Life Ins. Servs., Inc.*,
  188 F.3d 287 (5th Cir. 1999) ........................................................................8, 10

*Walter v. Int'l Ass'n of Machinists Pension Fund*,
  949 F.2d 310 (10th Cir. 1991) ..........................................................................15

*Wilczynski v. Lumbermens Mut. Cas. Co.*,
  93 F.3d 397 (7th Cir. 1996) ..............................................................................15

**Statutes**

29 U.S.C. § 1132(a) ...............................................................................................8

29 U.S.C. § 1132(c) .........................................................................................15, 16

**Other Authorities**

29 C.F.R. § 2560.503-1 .....................................................................................14, 15

Fed. R. Civ. P. 56(c)..............................................................................................7

Defendant Charter Communications, Inc. ("Charter"), by its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby moves for summary judgment, and, in support thereof, states as follows:

## INTRODUCTION

In this ERISA lawsuit, Plaintiff William Keaton ("Keaton"), a former employee of Time Warner Cable, Inc. ("TWC"),[1] asserts two claims under the Time Warner Cable Benefits Plan (the "Plan") against Charter and Sedgwick Claims Management Services, Inc. ("Sedgwick"), independent third-party claims administrator of the Plan. Keaton claims that the defendants violated the Plan and ERISA by: (1) improperly denying him short-term disability ("STD") benefits; and (2) failing to provide him with copies of certain Plan documents.

Keaton cannot prevail on either of his claims. First, Sedgwick's denial of Keaton's STD claim is subject to review under an abuse of discretion standard because Sedgwick independently administered his claim without any conflicts of interest. The evidence in the administrative record, including the independent opinions of two medical professionals, provides ample support for Sedgwick's determination that Keaton was not "totally disabled" as defined by the Plan.

Second, Keaton's claim for statutory penalties based on Charter's alleged failure to provide him requested Plan documents fails for multiple reasons. As an initial matter, a plan administrator like Charter is not subject to the regulation underlying Keaton's claim for penalties. Moreover, the record reflects that Sedgwick responded to Keaton's document requests. Finally, Keaton cannot establish that Charter acted in bad faith or that he suffered prejudice, as required for a court to impose statutory penalties against a plan administrator.

Accordingly, the Court should enter summary judgment in favor of Charter on both of Keaton's claims.

---

[1]   Charter merged with TWC in 2016.

## UNDISPUTED FACTS

### The Parties

Defendant Charter is a telecommunications company that provides cable, pay TV, telephone, and high-speed internet services to customers throughout the United States. On May 18, 2016, Charter merged with TWC. (Compl. ¶ 4.)

Defendant Sedgwick is an independent third-party claims administrator that at all relevant times administered the STD component of the Plan pursuant to a Service Agreement (defined below) between Sedgwick and TWC/Charter. (*Id.* ¶¶ 3, 11.)

Plaintiff Keaton had been employed by TWC as a Major Account Executive until he ceased working with the company on April 30, 2015. (*Id.* ¶ 10.) On May 1, 2015, Keaton submitted a claim for STD benefits under the Plan to Sedgwick. (*Id.* ¶ 15.)

### The Short Term Disability Benefits Plan

The Plan was enacted to provide certain health and welfare benefits to eligible TWC employees or retirees, their dependents, and their beneficiaries.[2] It is comprised of several component programs, each of which provides a discrete benefit. (*See* Wilmas Decl. Ex. 1, Plan at § 2.9, *id.* at Ex. A.) Each component program is administered by a claims administrator, most often an independent third-party company that specializes in the administration of such claims. (*See id.* at § 2.4.)

The Plan's STD program is a subset of the Disability component program, and is self-insured, with benefits paid to participants out of general company assets. (*Id.* at Ex. A.) If an eligible participant is unable to work due to an illness or injury, the STD program replaces a percentage of that participant's pre-disability income for up to 26 weeks. (2014 Disability

---

[2]   A true and correct copy of the Plan is attached as Exhibit 1 to the Declaration of Lynn Wilmas, dated December 1, 2017, exhibits to which are cited herein as "Wilmas Decl. Ex."

Benefits Highlights (Wilmas Decl. Ex. 2, the "Highlights") at 2; Disability Program Summary Plan Description (Wilmas Decl. Ex. 3, the "SPD") at 4–5.) A claimant is eligible to begin receiving STD benefits if he is "totally disabled" – meaning he "cannot perform the Essential Duties of [his] own occupation." (Wilmas Decl. Ex. 3, SPD at 7.) Sedgwick functions as the claims administrator for the STD program pursuant to a Service Agreement for Administration of a Claims Program (Wilmas Decl. Ex. 4, the "Service Agreement") with TWC/Charter. (Wilmas Decl. Ex. 4, Service Agreement at § 1.A; *id.* at Ex. C § B; *see also* Wilmas Decl. Ex. 2, Highlights at 2.) In its role as claims administrator, Sedgwick has "sole authority to determine benefit claims under the terms of the Disability Program." (Wilmas Decl. Ex. 3, SPD at 9.)

Claimants have the right to appeal denials of benefits to Sedgwick. (*Id.* at 10.) Appeals are evaluated by "a person different from the person who made the initial determination" who is not a subordinate of the initial claims handler, and "[n]o deference is afforded to" the initial decision. (*Id.* at 11.) Claimants are given the opportunity to present additional evidence of disability, and the appellate review "take[s] into account all new information, whether or not presented or available at the initial determination." (*Id.*) Appellants are "provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to [their] claim for benefits." (*Id.* (internal quotations omitted).)

**Keaton's Disability Claim**

Keaton was treated for coronary artery disease on February 6-7, 2015. (R 145–46.)[3] At this time, his cardiologist performed a percutaneous coronary intervention using a coronary catheter known as a stent. (*Id.*) Keaton ceased working at TWC on April 30, 2015 and submitted a claim for STD benefits under the Plan to Sedgwick on May 1, 2015. (R 314–17.)

---

[3]   A true and correct copy of Keaton's Administrative Record is attached as Exhibit 1 to the Affidavit of Jennifer Beckermann, dated November 30, 2017, and is cited herein as "R."

In support of his STD claim, Keaton submitted an Attending Physician Statement completed by his internist, Rita A. Friedrichs, M.D., on May 20, 2015 (R 208–09.) Dr. Friedrichs noted complaints of chest pain, low energy, and limited exercise tolerance, and diagnosed Keaton with coronary artery disease, diabetes, and chronic obstructive pulmonary disease. (*Id.*) Keaton was advised to continue his previously prescribed medication, consisting of beta blockers, ACE inhibitors, cholesterol management medication, and blood thinners. (*Id.*) No pain relief medication or other pain treatment was prescribed. Dr. Friedrichs estimated Keaton's duration of disability at 31 days. (*Id.*)

After a review of Dr. Friedrichs's report, and two unsuccessful attempts to contact Dr. Friedrichs, Sedgwick's initial assessment was to deny Keaton's claim. (R 297–98.) In evaluating the report, the claims adjuster noted that "[t]here is no severity of condition" or "evidence of functional impairment," and that Keaton's "subjective" complaints are not adequately supported by his doctor's objective findings. (*Id.*) The adjuster concluded that, based on Keaton's "sedentary" position, "[i]t is not known why he cannot perform his job duties at present." (*Id.*) A subsequent review of Dr. Friedrichs's report led to a similar conclusion, that the "[m]edical information does not substantiate disability." (R 295.) A supervisor agreed with these assessments, (R 293), and on June 8, 2015, Sedgwick issued a letter informing Keaton of its decision to deny STD benefits, (R 190-92). The letter noted that Dr. Friedrichs's report "failed to provide objective medical evidence of functional impairment or indicate any emergent or escalated care was required" during the requested disability period. (R 191.)

After retaining counsel and requesting an extension of time to gather additional medical records, Keaton appealed his denial of STD benefits to Sedgwick on February 11, 2016. (R 34–35.) Keaton's appeal attached medical records documenting his stenting procedure on February

6-7, 2015, several progress notes from Dr. Friedrichs's office covering a treatment period of February 2015 to July 2015, and a letter from Dr. Friedrichs dated January 19, 2016. (R 36–130.)

These records, and Keaton's prior file, were reviewed by Robert Bryg, M.D., a Board-certified cardiologist. On February 26, 2016, Dr. Bryg issued a report wherein he determined that Keaton was not disabled from his occupation as of May 1, 2015. (R 21–30.) Specifically, Dr. Bryg noted clinical findings evidencing "fatigue and poorly controlled diabetes" but observed that based on the medical records provided, Keaton "had no further chest pain" following his stenting procedure. (R 28.) Accordingly, Dr. Bryg concluded that "[w]ithout chest pain, there is no evidence of disability from a cardiovascular perspective." (*Id.*)

These records were also reviewed by Anu Davis, M.D., a Board-certified endocrinologist. On April 7, 2016, Dr. Davis issued a report wherein she similarly concluded that Keaton was not disabled from his occupation as of May 1, 2015. (R 14–18.) Specifically, Dr. Davis noted diagnoses of poorly controlled diabetes and complaints of fatigue, poor concentration and low energy. (R 16.) She observed "a lack of clinical records to support disability" because "[t]here is no mention of [shortness of breath] in the clinical records due to the claimant's heart issues." (*Id.*) Dr. Davis concluded that the records "fail[ed] to document new impairments or physical or functional limitations" that would have "prevent[ed] [Keaton] from working his sedentary level job."[4] (*Id.*)

Sedgwick denied Keaton's appeal on April 8, 2017. (R 4–7.) In evaluating the appeal, Sedgwick's claims team reviewed all of the records provided by Keaton, consisting of "medical records from Timothy Dao, MD, Mithila Fadia, MD, Rita Friedrichs, MD, Son Pham, MD,

---

[4]   Both Dr. Bryg and Dr. Davis attempted to contact Dr. Friedrichs on multiple occasions during the course of their respective evaluations, but Dr. Friedrichs did not respond to any of these requests. (*See* R 14–15, 22.)

Michael Phillips, MD, Andrew Slusher, MD, Tanya Gambli, RN, Preciosa Jumamil, RN, and Myocardial Perfusion Imaging dated February 06, 2015 through January 19, 2016." (R 6.) Sedgwick also relied on the aforementioned evaluations conducted by Drs. Bryg and Davis. (*Id.*) Sedgwick ultimately determined that "the medical information in the file [did] not support [Keaton]'s inability to perform [his] occupation[.]" (*Id.*)

### Keaton's Requests for Documentation

During the course of his STD claims and appeals process, Keaton's counsel sent several document requests to Sedgwick. Specifically, Keaton sent Sedgwick (but not TWC/Charter) three requests for "all plan documents and all documents, records, and other information relevant to Mr. Keaton's claim for short-term disability benefits" on June 30, 2015, September 2, 2015, and September 24, 2015. (R 171, 176, 178.) Separately, on May 12, 2016, Keaton's counsel sent a letter to Sedgwick requesting the "Time Warner Cable Benefits Plan Summary Plan Description and a copy of the Plan." (R 1.) An identical request was sent to TWC that same day.[5]

The administrative record shows that Sedgwick complied with these requests as of July 8, 2015. On that date, Sedgwick sent Keaton a letter enclosing "the documents on file throughout the life of the claim." (R 177.) The claims adjuster's notes memorialize a "FedEx confirmation of delivery to [Keaton's] home address on 7/10/15 7.15 am" and provide a FedEx tracking number confirming same. (R 280.)

Separately, on September 29, 2015, the adjuster "[r]equested copy of SIR documents to be sent to legal representative." (*Id.*) And on October 1, 2015, Sedgwick sent Keaton's attorney a letter enclosing "the documents on file throughout the life of the claim." (R 169.)

---

[5]   This correspondence is not part of the administrative record.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 213 (5th Cir. 1999). The "movant must either submit evidence that negates . . . [a] material element of the nonmoving party's claim" or "merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim[.]" *Kidder v. Aetna Life Ins. Co.*, No. 14-cv-665, 2016 WL 1241549, at *2 (W.D. Tex. Mar. 28, 2016) (Rodriguez, J.) (citing *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990)). "Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate." *Id.* (citing *Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991)).

The mere existence of a factual dispute does not preclude the grant of summary judgment – rather, the non-moving party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in the original); *Letter v. Unumprovident Corp.*, 428 F. App'x 319, 321 (5th Cir. 2011). To sustain this burden, the non-moving party must rely on evidence admissible at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250 (1986); *Montes v. Phelps Dodge Indus., Inc.*, 481 F. Supp. 2d 700, 711 (W.D. Tex. 2006).

## ARGUMENT

## I.   THE COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF CHARTER ON COUNT I FOR DENIAL OF STD BENEFITS.

Because Sedgwick, as the Claims Administrator, has discretionary authority with respect to Keaton's claim, the Court must defer to Sedgwick's factual determinations and review its

determinations under the abuse of discretion standard. As there is no evidence in the administrative record to indicate that Sedgwick abused its discretion in making the benefits determination at issue, Charter is entitled to summary judgment on Keaton's STD claim.

### A.    Sedgwick's Denial of Keaton's Claim for STD Benefits Is Subject to Review Under an Abuse of Discretion Standard.

Although ERISA authorizes a district court to review denials of claims, the statute does not specify the appropriate standard of review. *See* 29 U.S.C. § 1132(a)(1)(B). The law in the Fifth Circuit is "clear that 'when an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion.'" *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999)). The district court's review is limited to the "administrative record" – the body of documents made available to the administrator and upon which the administrator based its decision. *Vega*, 188 F.3d at 299–300; *Kidder*, 2016 WL 1241549, at *4. The administrator's claim determination must be affirmed if there is "relevant evidence" in the administrative record that is "adequate to support [the] conclusion." *Keller v. AT&T Disability Income Plan*, 664 F. Supp. 2d 689, 700 (W.D. Tex. 2009) (Rodriguez, J.), *aff'd*, 481 F. App'x 86 (5th Cir. 2010).

Courts are most deferential when the decision is not subject to a potential conflict of interests. *See Chapman v. Prudential Life Ins. Co. of Am.*, 267 F. Supp. 2d 569, 578 (E.D. La. 2003). "[T]he administrator of the plan is self-interested" when "the employer contracts with a third party that both insures and administers the plan." *Vega*, 188 F.3d at 295. In contrast, no conflict exists when "the employer funds the program and . . . contracts with a third party who administers the plan[.]" *Id.*

Here, Sedgwick, the claims administrator, is granted the "sole authority to determine benefit claims under the terms of the Disability Program." (Ex. 3, SPD at 9.) Accordingly, the abuse of discretion standard applies. *Baker*, 364 F.3d at 629. The grant of discretion afforded to Sedgwick's decision is strengthened because no conflict of interests exists – Sedgwick, the claims administrator, is independent from Charter, which funds the Plan. (Ex. 4, Service Agreement at § 1.A.) *See Chapman*, 267 F. Supp. 2d at 578.

**B.      Sedgwick's Did Not Abuse its Discretion in Denying Keaton's Claim for STD Benefits.**

Sedgwick's decision to deny STD benefits was, at every step, the product of a deliberate, principled reasoning process, and was supported by ample relevant evidence in the administrative record. Under the Plan, Keaton would only have been eligible to begin receiving disability benefits if he was "totally disabled," such that he "[could] not perform the Essential Duties of [his] own occupation." (Ex. 3, SPD at 7.) Essential Duties is defined by the Plan as "important tasks, functions and operations generally required by employers from those engaged in their usual occupation that cannot be reasonably omitted or modified." (*Id.* at 13.)

Keaton's position of "Major Account Executive" was "sedentary" and required primarily seated office work, computer processing, and telephonic communication. (*See, e.g.*, R 23 (noting Keaton's "sedentary occupation which does not require significant physical activity that would create complications or further injury"); R 155 (describing position as a "sales position" that primarily requires sitting, and does not require much if any lifting, carrying, or strenuous movements); R 301 (describing job duties as "office work, computer work, and phone work.").)

Upon initial review of Keaton's file, the adjuster determined that there was "no . . . evidence of functional impairment" and no support as to why Keaton "[could] not perform his job duties at present." (R 298.) Thereafter, a Board-certified cardiologist concluded, after

reviewing Keaton's treatment records, that Keaton "had no further chest pain" following his stenting procedure and therefore, "there [was] no evidence of disability from a cardiovascular perspective." (R 28.) After reviewing the same medical records, a Board-certified endocrinologist independently concluded that "[t]here is no mention of [shortness of breath] in the clinical records due to the claimant's heart issues" and that the records "fail[ed] to document new impairments or physical or functional limitations" that would "prevent [Keaton] from working his sedentary level job." (R 16.) Based on these findings, and an independent review of Keaton's treatment record, Sedgwick ultimately denied Keaton's appeal because it determined that "the medical information in the file [did] not support [Keaton]'s inability to perform [his] occupation[.]"[6] (R 6.)

Numerous courts have upheld benefits decisions made following similar decision-making processes. For example, in *Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329 (5th Cir. 2001), the claimant applied for disability benefits due to angina and coronary artery disease, discovered after he suffered a heart attack. *Id.* at 330–31. Gooden submitted, among other documents, an Attending Physician's Statement, medical records related to his hospitalization and treatment, and a letter from his doctor that confirmed Gooden's diagnoses and disability but "was dated after Gooden had been informed that his employment was terminated." *Id.* at 331. But when a medical expert reviewed Gooden's file on behalf of the administrator, it was

---

[6]   Keaton makes much of the fact that the initial denial of his claim for STD was based solely on Dr. Friedrichs's Attending Physician Statement. (*See, e.g.*, Compl. ¶ 16.) But Keaton bore the burden to submit evidence in support of his claim. *Vega*, 188 F.3d at 298-99 (administrator has no duty to investigate; reason and efficiency demand that claimant must generate evidence supporting his benefits claim). In any event, this contention is a red herring. Keaton's appeal was conducted with the benefit of voluminous additional treatment records, and was carried out by a different adjuster who gave no deference to the initial claim determination. (Wilmas Decl. Ex. 3, SPD at 11.) Keaton ultimately does not point to any evidence that Sedgwick failed to review during its claims process.

"determined that the condition of Gooden's heart could be verified from his most recent [medical examination]" and that, "[b]ased on these results and Gooden's job responsibilities, . . . Gooden was capable of performing all of his job's duties." *Id.* at 331-32. The administrator ultimately concluded "that the 'objective medical findings' did not support Gooden's disability claim" and denied benefits. *Id.* The administrator upheld its decision on appeal, based on largely the same documentation and under the same rationale. *Id.* at 332.

While the district court held that the administrator's decision constituted abuse of discretion, the Fifth Circuit reversed, holding that the administrator "did not abuse its discretion when it denied Gooden's claim because its decision is supported by the administrative record." *Id.* at 333. Specifically, the Fifth Circuit noted that the administrator was able to point to "[a medical professional]'s recommendation, and the information regarding the requirements of Gooden's job" which all indicated "that Gooden was capable of fulfilling the duties of his job prior to his termination." *Id.* And even though Gooden's doctor submitted "a letter . . . stating that Gooden was disabled, this letter does not undermine [the administrator]'s decision, as it was written after Gooden learned he was being terminated, and was unaccompanied by medical evidence indicating that Gooden's condition changed[.]" *Id.* at 333–34.

Similarly, in *Keller*, the plaintiff filed for disability after a fall exacerbated her pre-existing spinal injuries. 664 F. Supp. 2d at 693 (Rodriguez, J.). In support, she submitted medical records from three doctors confirming multiple compression fractures and documenting back pain, which impeded her regular job duties—sitting, talking, and typing. *Id.* at 693-95, 701. The third-party claims administrator nevertheless denied Keller's claim, relying on the opinions of two consulting doctors. *Id.* at 696–97. Those doctors reviewed Keller's treatment records and opined, in relevant part, that "the claimant's subjective complaints are not substantiated by

objective clinical findings that would prevent her from being employed or being fit for full duty in her normal occupation." *Id.* at 696.

This Court granted summary judgment in favor of the employer, holding that the claims administrator "did not abuse its discretion when it denied Keller's claim." *Id.* at 700. Specifically, this Court held that the denial of benefits was appropriate because, like in the instant case, the plaintiff's "medical records provided by [her] treating physicians provided no *objective* evidence that she could not perform her job duties" and "no *objective* evidence . . . proving that the pain would prevent her from performing her job duties." *Id.* at 701–02 (holding that the claims administrator's "conclusion seems rationally related to the evidence") (emphasis added). The Fifth Circuit affirmed, "agree[ing] with the district court that the physician reports in the record provide sufficient evidence to support the administrator's decision." *Keller v. AT&T Disability Income Plan*, 481 F. App'x 86, 87 (5th Cir. 2010).

Simply stated, in the Fifth Circuit, an administrator does not abuse its discretion when it bases its decision to deny benefits on the opinions of independent physicians who disagree with those of the beneficiary's physicians. *See, e.g., Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (holding that there was substantial evidence to affirm the denial of benefits because the administrator conducted a review of the claim, "using a number of qualified physicians and based on all the hospital records"); *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 601–02 (5th Cir. 1994) (holding that there was "ample evidence to support [the administrator]'s finding that the claimant was not permanently disabled," even though the plaintiff's treating physicians had opined otherwise, because the administrator "considered all of the medical records . . . , contracted independent consultants to evaluate those records and determine whether they supported her physical limitations, . . . and

reviewed the entire administrative record twice"); *see also Chapman*, 267 F. Supp. 2d at 587; *Stone v. Prudential Ins. Co. of Am.*, 226 F. Supp. 2d 818, 825 (W.D. La. 2002) (holding that "an administrator does not act arbitrarily when it bases its decision to deny benefits on the opinions of independent physicians who disagree with those of the beneficiary's physicians").

Because Sedgwick's decision to deny benefits was based on a thorough evaluation of Keaton's medical records, as well as determinations made by independent medical professionals, it was not arbitrary or capricious. In fact, ample evidence in the administrative record supported Sedgwick's determination that Keaton was not "totally disabled" as defined by the Plan. Accordingly, Sedgwick cannot be said to have abused its discretion in denying Keaton's claim for STD benefits.

### C.   Sedgwick's Denial of Keaton's Claim for STD Benefits Must Be Upheld Even if the Court Applies *De Novo* Review.

Even if the Court applies a *de novo* standard of review, the administrative record shows that Sedgwick's claim determination was correct. As set forth above, the determination was based on substantial evidence, and was made in accordance with the procedural and substantive requirements of the Plan and ERISA.

Moreover, regardless of the standard of review applicable to an administrator's ultimate authority to determine benefit eligibility, any factual determinations made by the administrator during the course of a benefits review remain subject to an abuse of discretion standard. *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 522 (5th Cir. 2000). "[A]n administrator's finding that a claimant's condition meets a definition in the policy" is a "factual determination." *Chapman*, 267 F. Supp.2d at 576 (citing *Gooden*, 250 F.3d at 331.

Here, Sedgwick did not abuse its discretion in making the factual determination that Keaton's condition – as diagnosed by his own physicians – did not meet the definition of

"disability" in the Plan. Sedgwick determined that Keaton's job duties were "sedentary" and involving "office work, computer work, and phone work." (R 301.) After reviewing Keaton's medical records, Sedgwick's adjuster determined that there was "no . . . evidence of functional impairment" and no support as to why Keaton "[could] not perform [those] job duties[.]" (R 298.) On administrative appeal, two Board-certified medical specialists concluded that "there [was] no evidence of disability from a cardiovascular perspective," (R 28,) and that Keaton's treatment records "fail[ed] to document new impairments or physical or functional limitations" that would "prevent [him] from working his sedentary level job," (R 16,) Accordingly, Sedgwick had ample evidence from which to conclude that "the medical information in the file [did] not support [Keaton]'s inability to perform [his] occupation[.]" (R 6.)

## II.   THE COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF CHARTER ON COUNT II FOR FAILURE TO PROVIDE PLAN DOCUMENTS.

Charter is entitled to summary judgment on Keaton's document claim for three independent reasons. First, the statute underlying Keaton's claim imposes duties on benefits plans, not plan administrators like Charter. Second, the record shows that Sedgwick complied with Keaton's information requests in 2015 – one year before he sent a request to Charter, and almost two years before he filed suit. Third, even if that were not the case, Keaton is not entitled to damages because he cannot adduce proof of prejudice or bad faith.

### A.   Keaton's Document Claim Fails as a Matter of Law.

Charter, as the Plan Administrator, is not subject to the penalties sought by Keaton. On May 12, 2016, Keaton sent TWC a letter requesting "Time Warner Cable Benefits Plan Summary Plan Description and a copy of the Plan." Keaton alleges that Charter was obligated to provide these documents to him pursuant to 29 C.F.R. § 2560.503-1. (Compl. ¶ 32.) According

to Keaton, Charter's purported failure to do so results in statutory penalties under 29 U.S.C. § 1132(c)(1). (*See* Compl. at ¶¶ 31–35.)

Keaton's claim is based on a fundamental misunderstanding of the statutory scheme. The regulation cited by Keaton, 29 C.F.R. § 2560.503-1, imposes requirements on the "employee benefit plan," not on the plan administrator. So even if Keaton did not receive the documents he requested—which he did, as is explained below—such an omission by Charter, the Plan Administrator, would not violate § 2560.503-1 as a matter of law, and thus, statutory liability under § 1132(c) could not be triggered. *See Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 859 (S.D. Tex. 2016) (granting summary judgment to administrator because 29 C.F.R. § 2560.503-1 "imposes claim procedure requirements on the 'plan'" whereas § 1132(c) penalizes "failures or refusals 'to comply with a request for any information which such *administrator* is required by this title to furnish.") (emphasis in the original).

While the Fifth Circuit has not yet addressed this issue, its sister circuits are nearly unanimous in holding that a failure to follow claims procedures imposed on benefits *plans* (such as 29 C.F.R. § 2560.503-1) cannot give rise to penalties under 29 U.S.C. § 1132(c)(1), which governs plan administrators. *Medina v. Metro. Life Ins. Co.*, 588 F.3d 41, 48 (1st Cir. 2009); *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 58 (2d Cir. 2016); *Groves v. Modified Ret. Plan for Hourly Paid Employees of Johns Manville Corp. & Subsidiaries*, 803 F.2d 109, 117 (3d Cir. 1986); *VanderKlok v. Provident Life & Acc. Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992); *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 405 (7th Cir. 1996); *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1089 (8th Cir. 2009); *Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1161 (9th Cir. 2016); *Walter v. Int'l Ass'n of Machinists*

15

*Pension Fund*, 949 F.2d 310, 315 (10th Cir. 1991). The overwhelming weight of authority requires the same result here.

**B.      Sedgwick Complied with Keaton's Document Requests.**

Even if Keaton's document claim was sustainable at law, which it is not, the Administrative Record shows that Sedgwick sent Keaton all documents relevant to his claim as of July 2015, and again in October 2015. A letter was sent on July 8, 2015 from Sedgwick to Keaton's home address, enclosing "the documents on file throughout the life of the claim." (R 177.) The claims adjuster's notes show a "FedEx confirmation of delivery to [Keaton's] home address on 7/10/15 7.15 am" and provide a FedEx tracking number. (R 280.) A similar letter was sent from Sedgwick directly to Keaton's attorney on October 1, 2015. (R 169) (enclosing "the documents on file throughout the life of the claim."). On this record, summary judgment should be entered against Keaton on his document claim.

**C.      Keaton Cannot Establish the Requisite Bad Faith or Prejudice Required for the Imposition of Statutory Penalties.**

Even if this Court determines that a question of fact exists as to whether Keaton received the requested documents, it still should enter summary judgment on the claim because Keaton cannot establish bad faith or prejudice. Statutory penalties for failure to provide claim documents are levied at the court's discretion, and as the court deems proper. 29 U.S.C. § 1132(c). "Courts in the Fifth Circuit regularly deny a request for penalty damages when the plaintiff does not allege bad faith by the defendant or show that it has been somehow prejudiced." *Kidder*, 2016 WL 1241549, at *10 (Rodriguez, J.).

Here, Keaton does not even allege, much less adduce evidence, that he was prejudiced by Charter's purported failure to provide Plan documents. In fact, by the time Keaton requested documents from Charter/TWC, his STD claim and administrative appeal had long since been

submitted, evaluated, and denied. (*See* R 5-7; 190-92.) Moreover, Keaton has never alleged that any such denial was due to his inability to obtain Plan documents or his lack of knowledge regarding relevant Plan provisions. Nor can he, considering that relevant definitions and explanations of STD eligibility were provided in Sedgwick's initial denial of Keaton's claim. (*See* R 191–92) (detailing definition of "total disability" under the Plan).) An award of statutory penalties under these circumstances would be inappropriate. *See Kidder*, 2016 WL 1241549, at *10 (Rodriguez, J.) (penalties inappropriate where "the document requested here would not have offered [plaintiff] a more detailed explanation as to why his benefits were denied [and e]ven if it had, the request was not sent until well after [plaintiff] could no longer file a second appeal[.]");*Thomason v. Metro. Life Ins. Co.*, 165 F. Supp. 3d 512, 522 (N.D. Tex. 2016) (noting that Fifth Circuit precedent requires prejudice), *aff'd*, No. 16-10634, 2017 WL 3049528 (5th Cir. July 18, 2017).

Likewise, Keaton does not allege, let alone adduce any evidence, that Charter acted in bad faith. In fact, the record shows the opposite is true. Charter delegated all administration and claims evaluation under the STD component of the Plan to Sedgwick. (Ex. 4, Service Agreement at §1.A; *id.* at Ex. C § B.) There is no evidence that Charter/TWC was aware of any of the three requests for Plan documents sent by Keaton in 2015. (R 171, 176, 178.) Nor is there any evidence that Charter willfully ignored Keaton's fourth request for Plan documents – the only such request sent to Charter/TWC. On this record it would be manifestly unjust to award statutory damages to Keaton. And in fact, many courts, including this one, have declined to do so as a matter of law. *See, e.g.*, *Kidder*, 2016 WL 1241549, at *10 (Rodriguez, J.) (collecting cases); *Chacko v. Sabre, Inc.*, No. 04-cv-886, 2005 WL 3636627, at *6 (N.D. Tex. Oct. 5, 2005), *aff'd*, 473 F.3d 604 (5th Cir. 2006) (denying statutory penalties where there was "no summary

judgment evidence of the bad faith required"). Keaton can present no evidence that would warrant the Court's departure from its own precedent.

## **CONCLUSION**

Charter respectfully requests that the Court grant its motion for summary judgment, dismiss Plaintiff's claims in their entirety, and grant all such other relief that the Court may deem appropriate.


Dated: December 1, 2017                    Respectfully submitted,


By:  *s/ Christina E. Ponig*
_____

       Christina E. Ponig
       DLA PIPER LLP (US)
       1000 Louisiana Street, Suite 2800
       Houston, Texas 77002-5005
       Tel: 713.425.8436
       Fax: 713.300.6036
       christina.ponig@dlapiper.com

       Raja Gaddipati (admitted *pro hac vice*)
       DLA PIPER LLP (US)
       444 West Lake Street, Suite 900
       Chicago, IL 60606-0089
       Tel: 312.368.4000
       Fax: 312.236.7516
       raja.gaddipati@dlapiper.com

       *Counsel for Defendant Charter*
       *Communications, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendant Charter Communications, Inc.'s Motion for Summary Judgment has been served electronically via the Court's CM/ECF system on December 1, 2017 to all counsel of record.


By: *s/ Christina E. Ponig*
Christina E. Ponig