IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WILLIAM KEATON, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| vs. | § | Civil Action No.  5:17-cv-223 |
| | § | |
| SEDGWICK CLAIMS MANAGEMENT | § | |
| SERVICES, INC. AND CHARTER | § | |
| COMMUNICATIONS, INC. (f/k/a TIME | § | |
| WARNER CABLE, INC.), | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S ANSWER TO
FIRST AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendant Charter Communications, Inc. ("Charter"), by its undersigned counsel and pursuant to Rules 7 and 8 of the Federal Rules of Civil Procedure, hereby answers the First Amended Complaint ("FAC") filed by Plaintiff William Keaton ("Keaton").  Except as otherwise expressly admitted herein, Charter denies each and every allegation in the FAC, including without limitation, any allegations contained in its prayer for relief, headings, and subheadings.  In accordance with Rule 8(b)(5) of the Federal Rules of Civil Procedure, to the extent that Charter denies knowledge or information sufficient to form a belief about the truth of an allegation, that allegation is deemed to be denied.  The Answer is based upon Charter's investigation to date, and Charter expressly reserves the right to amend its Answer to the full extent provided by applicable law.

[The remainder of this page is intentionally left blank]

1.      William Keaton ("Plaintiff" or "Keaton") files this First Amended Complaint against Sedgwick Claims Management Services, Inc. ("Sedgwick") and Charter Communications, Inc. (f/k/a/ Time Warner Cable, Inc.) ("Charter").

**ANSWER:  Charter admits the allegations in paragraph 1.**

**I.**
**PARTIES**

2.      Plaintiff, William Keaton, is an individual and resident of Comal County, Texas.

**ANSWER:  Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2.**

3.      Sedgwick is a third-party administrator that conducts business in Texas, with its principal place of business in Illinois.  Sedgwick can be served with citation by serving the Texas Commissioner of Insurance, by certified mail, return receipt requested, at 333 Guadalupe Street, Austin, Texas 78701-3938.

**ANSWER:  Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 3.**

4.      Time Warner Cable, Keaton's former employer, sold cable and internet service throughout the United States under the Time Warner Cable brand until May 18, 2016, when, as a result of a series of transactions, Time Warner Cable merged with Charter.

**ANSWER:  Charter admits the allegations in paragraph 4.**

5.      Charter is a Delaware corporation with its principal place of business in Stamford, Connecticut.  Charter can be served with citation by serving Corporation Service Company, its registered agent for service of process , by certified mail, return receipt requested, at 211 E. 7th St., Suite 620, Austin, Texas 78701.

**ANSWER:  Charter admits the allegations in paragraph 5.**

## II.
## JURISDICTION AND VENUE OF ERISA CLAIMS

7.      This action against Sedgwick and Charter arises under the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), 29 U.S.C. §1001 *et. seq.*

**ANSWER:   Paragraph 7 consists of legal conclusions to which no answer is required.**

8.      This Court has jurisdiction over the action pursuant to 29 U.S.C. § 1132(e)(1).

**ANSWER:   Paragraph 8 consists of legal conclusions to which no answer is required.**

9.      Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because the breach occurred in this district.

**ANSWER:   Paragraph 9 consists of legal conclusions to which no answer is required.   To the extent an answer is required, Charter denies that venue is proper in this district because the governing Plan documents contain a forum-selection clause that requires any legal action that arises under § 502(a) of ERISA to be brought in the United States District Court for the Southern District of New York.**

## III.
## FACTUAL BACKGROUND

10.      Keaton was employed by Time Warner Cable (which will be referred to herein as "Charter"), as a Major Account Executive.  As an employee of Charter, he was a participant in an employee benefit plan that provided short-term disability ("STD") benefits ("The Plan") to Charter employees.

**ANSWER:  Charter admits the allegations in paragraph 10.**

11.     Charter self-insures the Plan and therefore pays Plan benefits out of its general assets to eligible employees who work in Texas.  Sedgwick is the third-party administrator for the Plan.

**ANSWER:  Charter denies the allegations in the first sentence of paragraph 11 because a portion of the Plan is insured.  Charter admits the allegations in the second sentence of paragraph 11.**

12.     The Plan pays STD benefits to claimants who are deemed "totally disabled," which is defined as "You are considered totally disabled under *[SIC]* the Elimination Period if you cannot perform the Essential Duties of your own occupation.  You are considered totally disabled after the Elimination Period if:

- You are earning less that *[SIC]* 20% of your pre-disability Covered Compensation due to an injury or illness (including Mental Illness, Substance Abuse and pregnancy); and

- You cannot perform the Essential Duties of your own occupation."

**ANSWER:  Paragraph 12 consists of legal conclusions to which no answer is required.  To the extent an answer is required, Charter respectfully refers this Court to the quoted sections of the Plan, and denies any allegations in paragraph 12 inconsistent with the terms of the Plan.**

13.     Keaton ceased working at Charter on April 30, 2015 due to acute chest pain, severe fatigue, and significantly lowered exercise tolerance he suffered as a result of coronary artery disease, diabetes mellitus with neuropathy, hypertension, hyperlipidemia, obstructive sleep apnea and adjustment disorder with depression and anxiety.  In addition, on February 6, 2015, he underwent percutaneous coronary intervention—*i.e.*, implantation of a heart catheter—a procedure from which he had not completely recovered when he stopped working.

**ANSWER:  Charter admits that Keaton ceased working at Charter on April 30, 2015, and that Keaton underwent percutaneous coronary intervention on February 6, 2015. Charter lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 13, and, accordingly, denies the same.**

14.     On May 1, 2015, Keaton submitted a claim for benefits under the Plan to Charter, that in turn submitted it to Sedgwick to determine if he qualified for STD benefits.

**ANSWER:  Charter admits the allegations in paragraph 14.**

15.     As part of his initial claim, he submitted a May 20, 2015 Attending Physician's Statement ("APS") completed by his cardiologist, Dr. Rita Friedrichs, who opined he was unable to return to work even in a restricted capacity.

**ANSWER:  Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 15, and, accordingly, denies the same.**

16.     Despite the fact Keaton provided Sedgwick with a signed authorization to obtain his medical records, Sedgwick never requested them or asked that Keaton provide them. Sedgwick also failed to have his claim reviewed by a physician and/or request he undergo an independent medical examination.  Instead, Sedgwick concluded Keaton was not disabled under the Plan based solely on Dr. Friedrichs' APS.

**ANSWER:  Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16, and, accordingly, denies the same.**

17.     Sedgwick notified Keaton of its decision to deny his claim by letter on June 8, 2015.

**ANSWER:  Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17, and, accordingly, denies the same.**

18.     After receiving notice his claim had been denied, Keaton hired the undersigned counsel to assist him with appealing Sedgwick's decision.   Keaton's counsel sent a letter to Sedgwick on June 30, 2015 by certified mail to request a copy of the administrative record and all plan documents relating to his claim pursuant to 29 C.F.R. § 2560.503-1.  Sedgwick received the letter on July 6, 2015 but failed to respond or produce the requested documents within 30 days as required by the regulations governing ERISA.

**ANSWER:   Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18, and, accordingly, denies the same.**

19.     Keaton's counsel sent a second written request to Sedgwick for documents relating to the claim via certified mail on September 2, 2015, Sedgwick received the letter on September 9, 2015, but still failed to respond.

**ANSWER:   Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19, and, accordingly, denies the same.**

20.     Keaton's counsel sent a third written request to Sedgwick for documents relating to the claim via certified mail on September 24, 2015.  On or about October 1, 2015—more than three months after its deadline to produce the documents expired—Sedgwick finally acknowledged Keaton's request for documents.  However, it still failed to produce the entire administrative record relating to Keaton's claim and it did not produce a single document outlining the terms of the Plan.

**ANSWER:   Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20, and, accordingly, denies the same.**

21.     After finally obtaining a portion of the administrative record, Keaton submitted his appeal on February 11, 2016.  With his appeal, Keaton provided Sedgwick with a letter

supporting his disability authored by Dr. Friedrichs and his medical records from Audie L. Murphy Veteran's Administration Hospital in San Antonio (the "VA").

**ANSWER:** **Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21, and, accordingly, denies the same.**

22.     In her letter, Dr. Friedrichs stated she examined Keaton on several occasions after he underwent the February 6, 2015 heart catheter implantation procedure.  During those office visits, Dr. Friedrichs reported that not only was Keaton still recovering from the implantation procedure, but his diabetes had become uncontrollable, resulting in the disabling symptoms of profound fatigue and significantly lowered concentration and energy levels.  Dr. Friedrichs also opined Keaton was suffering from a possible adjustment disorder resulting in periods of acute anxiety and depression.  Dr. Friedrichs concluded her letter by stating Keaton's physical and cognitive symptoms prevented him from working starting on May 1, 2015 through the date of her letter.

**ANSWER:** **Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22, and, accordingly, denies the same.**

23.     Keaton also submitted his medical records from the VA with his appeal.  Those records confirmed Dr. Friedrich's statements in her letter and provided objective medical evidence of his disabling symptoms stemming from his various diagnoses.

**ANSWER:** **Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23, and, accordingly, denies the same.**

24.     Sedgwick upheld its decision to deny Keaton's claim for STD benefits on April 8, 2016.  As part of its investigation of the appeal, Sedgwick finally obtained Keaton's medical records, then sought the allegedly "independent" opinions of two physicians who only reviewed

those records and did not examine, much less talk to Keaton, or speak to Dr. Friedrichs or any of Keaton's other treating physicians.  Both physicians concluded, despite significant medical evidence to the contrary, that Keaton was purportedly "clinically stable" after his February 6, 2015 heart catheter implant procedure and that his medical records allegedly did not provide any evidence to support his disabling symptoms.

**ANSWER:  Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24, and, accordingly, denies the same.**

25.     After receiving Sedgwick's letter upholding its decision to deny Keaton's STD claim, Keaton's counsel once again attempted to obtain Plan documents relating to his claim.  On May 12, 2016, Keaton's counsel sent written requests to both Sedgwick and Charter by certified mail requesting a copy of the Plan and Charter's Summary Plan Description.  Charter received the letter on May 16, 2016 and Sedgwick received it the next day.  Unsurprisingly, neither Charter or Sedgwick ever acknowledged, much less produced, any Plan documents responsive to Keaton's written requests.

**ANSWER:  Charter lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first three sentences of paragraph 25, and, accordingly, denies the same.  Charter denies the allegations in the fourth sentence of paragraph 25.**

### IV.
### CAUSES OF ACTION

### COUNT ONE AGAINST SEDGWICK AND CHARTER
### Breach of the Plan and Policy Provisions Claim Under 29 USC § 1132(a)(1)(B)

26.     Keaton is entitled to STD benefits because he meets the definition of "total disability" in the Plan.

**ANSWER:  Charter denies the allegations in paragraph 26.**

27.     Keaton complied with his obligation to provide evidence in support of his claim and he has exhausted his remedies under the Plan.

**ANSWER:  Charter denies the allegations in paragraph 27.**

28.     The applicable standard of review is *de novo* because Sedgwick and Charter failed to provide Keaton with a full and fair review of his claim during both the initial claim investigation and during his appeal and they failed to obtain and consider evidence relevant to his claim.  Their decision to deny Keaton's benefits was both flawed and wrong.  In addition, Charter and Sedgwick operate the Plan and pay benefits under a conflict of interest.

**ANSWER:  Charter denies the allegations in paragraph 28.**

29.     In the alternative, Sedgwick and Charter's decision to deny Keaton's claim was arbitrary and capricious.

**ANSWER:  Charter denies the allegations in paragraph 29.**

30.     Pursuant to 29 U.S.C. § 1132(a)(1)(B), Keaton is entitled to recover his past-due STD benefits from Charter and Sedgwick.

**ANSWER:  Charter denies the allegations in paragraph 30.**

## COUNT TWO AGAINST CHARTER
### Administrator's Refusal to Supply Plan Documents Under 29 USC § 1132(c)(1)

31.     ERISA imposes penalties upon plan administrators that fail or refuse to comply with a request for information that an administrator is required to provide under the statute to a claimant.

**ANSWER:  Paragraph 31 consists of legal conclusions to which no answer is required.  To the extent an answer is required, Charter respectfully refers this Court to the ERISA statutory scheme, and denies any allegations inconsistent with the statute.**

32.     Under 29 U.S.C. § 1024(b)(4), a plan administrator must, upon written request of a participant, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

**ANSWER:   Paragraph 32 consists of legal conclusions to which no answer is required.   To the extent an answer is required, Charter respectfully refers this Court to the language of 29 U.S.C. § 1024(b)(4), and denies any allegations inconsistent with the regulation.**

33.     Charter received Keaton's written request for plan documents and the summary plan description on May 16, 2016, but failed to produce the requested documents by its June 15, 2016 deadline.   Keaton made additional written requests for plan documents once litigation commenced, but Charter still failed to timely produce them.   In short, Charter failed to timely provide Keaton with any documents governing the Plan in violation of 29 U.S.C. § 1132(c)(1).113

**ANSWER:   Charter denies the allegations in paragraph 33.**

34.     Therefore, Keaton is entitled to receive penalties up to $100 a day for each day that has passed since Charter's 30-day deadline to provide the plan documents expired until the date it finally produced them.

**ANSWER:   Charter denies the allegations in paragraph 34.**

## COUNT THREE AGAINST CHARTER AND SEDGWICK
### Reasonable and Necessary Attorney's Fees

35.     Pursuant to 29 U.S.C. § 1132(g)(1), Keaton seeks an award of his reasonable and necessary attorney's fees in connection with the prosecution of this action.

**ANSWER:   Charter denies the allegations in paragraph 35.**

## PRAYER

WHEREFORE, Keaton requests that the Court order:

1.     Charter to pay him penalties up to $100 a day for its failure to provide Plaintiff with all plan documents relevant to his claim.

**ANSWER:   Charter denies that Keaton is entitled to the relief requested in paragraph 1 of the Prayer.**

2.     Sedgwick and Charter to pay him the full STD benefits to which he is entitled.

**ANSWER:   Charter denies that Keaton is entitled to the relief requested in paragraph 2 of the Prayer.**

3.     Sedgwick and Charter to pay his reasonable attorney's fees incurred in pursuing the benefits to which he is entitled and under 29 U.S.C. § 1132(c)(1).

**ANSWER:   Charter denies that Keaton is entitled to the relief requested in paragraph 3 of the Prayer.**

4.     Sedgwick and Charter to pay him pre-judgment and post-judgment interest.

**ANSWER:   Charter denies that Keaton is entitled to the relief requested in paragraph 4 of the Prayer.**

5.     That he recover his costs and such other and further relief as the Court may deem proper under the circumstances.

**ANSWER:   Charter denies that Keaton is entitled to the relief requested in paragraph 5 of the Prayer.**

## AFFIRMATIVE DEFENSES

Charter, by its undersigned counsel, without admitting the sufficiency of Keaton's allegations, without assuming any burden of proof not placed on it by applicable law, and reserving the right to amend its Answer to assert any additional defenses when, and if, in the course of its investigation, discovery, preparation for trial, or otherwise, it becomes appropriate to assert such defenses, asserts the following Affirmative Defenses to the FAC:

### First Affirmative Defense

The Plan is self-funded by Charter. The Plan expressly grants Sedgwick discretionary authority to interpret Plan provisions and to make final determinations with respect to the claims at issue in this action under the Plan. Charter did not retain authority to make final determinations with respect to the claims at issue in this action under the Plan. Accordingly, no conflict of interests exists and the standard of review is one of abuse of discretion. *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004)

### Second Affirmative Defense

The determination that Keaton failed to establish that he was totally disabled, as defined under the Plan, was reasonable.

### Third Affirmative Defense

The administrative determination with respect to the Keaton's claim for disability benefits was legally correct, and was not arbitrary or capricious, and did not result from an abuse of discretion.

### Fourth Affirmative Defense

The administrative determination with respect to the Keaton's claim for disability benefits was the product of a deliberate, principled reasoning process without conflict of interest.

**Fifth Affirmative Defense**

The administrative determination with respect to Keaton's claim for disability benefits was supported by substantial evidence.  The materials considered in connection with making the administrative determination with respect to Keaton's claim for disability benefits were adequate and sufficiently supported the determination at issue.

**Sixth Affirmative Defense**

The administrative determination with respect to Keaton's claim for disability benefits was made in accordance with the procedural and substantive requirements of the Plan and ERISA, was consistent with the purpose and goals of the Plan, and was consist with other provisions of the Plan and earlier interpretations of the Plan.

**Seventh Affirmative Defense**

Keaton is not entitled to disability benefits except in accordance with the terms of the Plan.

Charter reserves the right to supplement its Affirmative Defenses to the extent any additional defenses become available or apparent during the course of this litigation.

WHEREFORE, Charter denies that Keaton is entitled to any of the relief sought and respectfully requests that the Court:

a.      dismiss the FAC with prejudice and enter judgment for Charter;

b.      award to Charter its costs and expenses incurred in defending this action; and

c.      grant such other and further relief as the Court deems just and proper.

Respectfully submitted,


Dated:  February 6, 2018                    By:  *s/ Christina E. Ponig*
                                                 Christina E. Ponig
                                                 DLA PIPER LLP (US)
                                                 christina.ponig@dlapiper.com
                                                 1000 Louisiana Street, Suite 2800
                                                 Houston, Texas 77002-5005
                                                 Tel: 713.425.8436
                                                 Fax: 713.300.6036


                                                 Kenneth Schmetterer (*pro hac vice* pending)
                                                 kenneth.schmetterer@dlapiper.com
                                                 Yan Grinblat (*pro hac vice* pending)
                                                 yan.grinblat@dlapiper.com
                                                 DLA PIPER LLP (US)
                                                 444 West Lake Street, Suite 900
                                                 Chicago, IL  60606-0089
                                                 Tel: 312.368.4000
                                                 Fax: 312.251.2183

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this Answer to First Amended Complaint and Affirmative Defenses has been served electronically via the Court's CM/ECF system on February 6, 2018 to all counsel of record.

By: *s/ Christina E. Ponig*

Christina E. Ponig