## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WILLIAM KEATON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-17-CV-223-XR |
| | § | |
| SEDGWICK CLAIMS MANAGEMENT | § | |
| SERVICES, INC. AND CHARTER | § | |
| COMMUNICATIONS, INC. (f/k/a TIME | § | |
| WARNER CABLE, INC.), | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## ORDER

On this date, the Court considered the status of the above captioned-cased. After careful consideration, the Court hereby GRANTS Defendant Charter Communications, Inc. ("Charter")'s Motion for Summary Judgment (Docket no. 44) and GRANTS Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick")'s Motion for Summary Judgment (Docket no. 45).

## BACKGROUND

On March 21, 2017, Plaintiff William Keaton filed his Complaint with this Court. Docket no. 1. Plaintiff filed his First Amended Complaint on January 23, 2018.[1] Docket no. 55. Plaintiff is a former employee of Charter and brings claims against it for denial of benefits under its employee benefit plan ("the Plan") for short-term disability ("STD") and refusal to supply plan

---

[1] Plaintiff filed his Amended Complaint only to remedy technical errors in his cause of action against Charter for violation of 29 U.S.C. § 1132(c)(1). *See* Docket no. 55.

documents. *Id.* Plaintiff also brings claims against Sedgwick, the third-party administrator for the STD component of the Plan, for denial of STD benefits. *Id.*

Plaintiff was employed by Time Warner Cable, Inc., with which Charter merged in 2016, as a Major Account Executive and was a participant in the Plan. *Id.* at 2. Plaintiff states the Plan pays STD benefits to claimants who are found to be "totally disabled," and under the Plan, a person is considered "totally disabled" after the Elimination Period if, "[y]ou are earning less than 20% of your pre-disability Covered Compensation due to an injury or illness (including Mental Illness, Substance Abuse and pregnancy); and [y]ou cannot perform the Essential Duties of your own occupation." *Id.* at 2–3.

Plaintiff alleges that he stopped working for Charter on April 30, 2015, "due to acute chest pain, severe fatigue, and significantly lowered exercise tolerance he suffered as a result of coronary artery disease, diabetes mellitus with neuropathy, hypertension, hyperlipidemia, obstructive sleep apnea and adjustment disorder with depression and anxiety." *Id.* at 3. On May 1, 2015, Plaintiff submitted a claim for benefits under the Plan to Charter, which then submitted it to Sedgwick to determine if he qualified for STD benefits. *Id.* Plaintiff submitted a May 20, 2015, Attending Physician's Statement ("APS") completed by his cardiologist Dr. Rita Friedrichs, who opined that Plaintiff was unable to return to work even in a restricted capacity. *Id.*

Plaintiff alleges that Sedgwick never requested medical records that he authorized it to obtain, failed to have his claim reviewed by a physician and/or request he undergo an independent medical examination, and concluded on June 8, 2015, that he was not disabled under the Plan based only on the APS. *Id.* Plaintiff appealed Sedgwick's decision and alleges he

requested a copy of the administrative record and all plan documents on June 30, 2015. *Id.* at 3–4. Plaintiff states Defendants failed to produce the requested documents within the required thirty days. *Id.* at 4. Plaintiff alleges he only received a portion of the administrative record after making additional requests in October 2015. *Id.* Plaintiff submitted his appeal on February 11, 2016, and provided Sedgwick "with a letter supporting his disability authored by Dr. Friedrichs and his medical records from Audie L. Murphy Veteran's Administration Hospital in San Antonio." *Id.*

Plaintiff states that Dr. Friedrichs's letter included that she examined him on several occasions after his February 6, 2015, heart catheter implantation, and that during those visits, Plaintiff was "still recovering from the implantation procedure, but his diabetes had become uncontrollable, resulting in the disabling symptoms of profound fatigue and significantly lowered concentration and energy levels." *Id.* Dr. Friedrichs further opined that Plaintiff suffered from "a possible adjustment disorder resulting in periods of acute anxiety and depression" and stated that Plaintiff's physical and cognitive symptoms prevented him from working beginning May 1, 2015, through the date of her letter. *Id.* at 4–5.

Sedgwick upheld its decision denying Plaintiff's claim for STD benefits on April 8, 2016. *Id.* at 5. Plaintiff states that two physicians from whom Sedgwick sought independent opinions concluded that Plaintiff was "clinically stable" after the heart catheter implant procedure and his medical records did not provide evidence to support his disabling symptoms. *Id.* Plaintiff alleges that these findings were made "despite significant medical evidence to the contrary." *Id.* Plaintiff alleges he then attempted to seek Plan documents related to his claim, but Defendants never acknowledged or produced the requested documents. *Id.*

Plaintiff alleges he is entitled to STD under the Plan because he meets the definition of "total disability." *Id.* at 6. Plaintiff brings claims against Charter and Sedgwick for breach of the Plan under 29 U.S.C. § 1132(a)(1)(B) for denying him STD benefits and failing to provide him with a full and fair review of his claim. *Id.* Plaintiff also brings a claim against Charter for failure to supply Plan documents under 29 U.S.C. § 1132(c)(1) after he requested specific documents. *Id.* at 6–7.

Defendants state that under the STD program, a claimant is eligible to receive benefits if he is "totally disabled," which means he "cannot perform the Essential Duties of [his] own occupation." Docket no. 44 at 7. Defendants allege that Sedgwick, as claims administrator for the STD program, has "sole authority to determine benefit claims under the terms of the Disability Program." *Id.* Defendants state that if a claimant exercises the right to appeal a denial of coverage, that appeal is evaluated by "a person different from the person who made the initial determination" who is not a subordinate of the initial claims handler, and "[n]o deference is afforded to" the initial decision. *Id.* Claimants may present additional evidence, and the appellate review "take[s] into account all new information, whether or not presented or available at the initial determination." *Id.* Defendants state that appellants are "provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to [their] claim for benefits." *Id.*

Defendants state that Sedgwick reviewed Dr. Friedrichs's APS, which estimated Plaintiff's duration of disability at thirty-one days. *Id.* at 8. Defendants allege that after reviewing the APS, and following "two unsuccessful attempts to contact Dr. Friedrichs, Sedgwick's initial assessment was to deny [Plaintiff's] claim." *Id.* The claims adjuster found that "[t]here is no

severity of condition" or "evidence of functional impairment," and that Plaintiff's "subjective" complaints are not adequately supported by his doctor's objective findings. *Id.* The adjuster labeled Plaintiff's employment position as "sedentary" and concluded that "[i]t is not known why [Plaintiff] cannot perform his job duties at present." *Id.* Sedgwick denied Plaintiff STD benefits, noting that Dr. Friedrichs's report "failed to provide objective medical evidence of functional impairment or indicate any emergent or escalated care was required" during the requested disability period. *Id.*

Defendants state that after Plaintiff appealed his denial of coverage, the file was reviewed by Dr. Robert Bryg, a Board-certified cardiologist. *Id.* at 9. Dr. Bryg concluded in his report that Plaintiff was not disabled from his occupation as of May 1, 2015, and noted clinical findings evidencing "fatigue and poorly controlled diabetes," but he observed that based on the medical records provided, Plaintiff "had no further chest pain" following his stenting procedure. *Id.* Dr. Bryg concluded that there was no evidence of disability. *Id.* Defendants state that a second report by Dr. Anu Davis, a Board-certified endocrinologist, similarly found that Plaintiff suffered from poorly-controlled diabetes and fatigue, but that there was "a lack of clinical records to support disability" because "[t]here is no mention of [shortness of breath] in the clinical records due to the claimant's heart issues." *Id.* Defendants allege that Sedgwick denied Plaintiff's appeal after reviewing all of the records provided by Plaintiff, which consisted of "medical records from Timothy Dao, MD, Mithila Fadia, MD, Rita Friedrichs, MD, Son Pham, MD, Michael Phillips, MD, Andrew Slusher, MD, Tanya Gambli, RN, Preciosa Jumamil, RN, and Myocardial Perfusion Imaging dated February 06, 2015 through January 19, 2016." *Id.* at 9–10. Sedgwick also allegedly relied on the evaluations conducted by Drs. Bryg and Davis. *Id.* at 10. Defendants

allege that Sedgwick determined that "the medical information in the file [did] not support [Plaintiff]'s inability to perform [his] occupation." *Id.* at 10.

Defendants state that Plaintiff sent Sedgwick three document requests related to his STD claim on June 30, 2015, September 2, 2015, and September 24, 2015, and that Plaintiff sent another request for Plan documents on May 12, 2016. Docket no. 44 at 10. Defendants allege that Sedgwick complied with Plaintiff's requests on July 8, 2015. *Id.*

On December 1, 2017, Charter moved for summary judgment, arguing that it did not violate the Plan or ERISA by denying Plaintiff STD benefits and that it did not fail to properly provide Plaintiff with copies of requested Plan documents. Docket no. 44. On the same date, Sedgwick filed its motion for summary judgment, joining and incorporating Charter's motion and memorandum in support of same, arguing that it did not violate the Plan or ERISA by denying Plaintiff STD benefits. Docket no. 45.

## I.      Legal Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once

the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## II.    Application

Defendants argue they are entitled to summary judgment on both the denial of STD benefits and the claim related to providing requested Plan documents. Plaintiff argues that Defendants' motion for summary judgment should be denied, and instead, the Court should enter summary judgment in his favor on these claims.[2]

### I.    Denial of STD Benefits

Defendants argue that they are entitled to summary judgment because Sedgwick's denial of Plaintiff's STD claim is subject to review under an abuse of discretion standard with respect to both Defendants, and there is no evidence in the administrative record to indicate Sedgwick abused its discretion. Plaintiff argues that, with respect to his claim against Charter, the Court

---

[2]    Although Plaintiff did not formally and timely file a cross-motion for summary judgment, the Court will consider the appropriateness of entering summary judgment in Plaintiff's favor when analyzing where material issues of genuine fact do or do not exist.

should review the denial of STD benefits *de novo* because Charter did not have discretionary authority to determine the payment of STD benefits—only Sedgwick had sole discretionary authority under the Plan. Plaintiff argues the Court should enter summary judgment in his favor.

## A. Plaintiff's Claim Against Defendant Sedgwick

A participant or beneficiary of a benefits plan may bring a civil action in a district court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The statute, however, does not set out the appropriate standard of review. Fifth Circuit law makes clear, however, that "when an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004) (quoting *Vega v. Nat'l Life Ins. Services, Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc)).[3] A district court's review is limited to the administrative record, which consists of "relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Vega*, 188 F.3d at 300. The Court may not review evidence outside the administrative record to resolve an issue of fact. *See id.*

"The law requires only that substantial evidence support a Plan fiduciary's decisions, including those to deny or to terminate benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004). Substantial evidence is "more than a

---

[3]     The Court recognizes that the Fifth Circuit has recently held that a court should apply a *de novo* standard of review even when a denial is based on a factual determination for plans that do not validly delegate discretionary authority to a plan administrator. *See Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018). Because the present case does involve a delegation of discretionary authority to Sedgwick, however, the Court applies an abuse of discretion standard of review.

scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* If the decision to deny benefits is supported by substantial evidence and is not arbitrary and capricious, it must prevail. *Id.* The abuse of discretion standard "sets a relatively high bar for the plaintiff to overcome." *Chapman v. Prudential Life Ins. Co. of Am.*, 267 F. Supp. 2d 569, 578 (E.D. La. 2003). If a plaintiff shows evidence that the plan administrator is a "self-interested insurer" that serves as both the insurer and administrator of a plan "and stands to gain from a denial of the claim," a district court may apply a "sliding scale" that relaxes the abuse of discretion standard. *Id.* But a court will apply the standard abuse of discretion standard when the plan administrator is not a self-interested insurer. *See id.*; *see also Vega*, 188 F.3d at 295.

For the STD portion of the Plan, Sedgwick is "the claims fiduciary with sole authority to determine benefit claims under the terms of the Disability Program." Docket no. 44-1 at 51. Defendants state that Sedgwick is not a "self-interested insurer" and no conflict of interest exists because Sedgwick is independent from Charter, which funds the plan. *See* Docket no. 44-1 at 58. Plaintiff does not dispute that Sedgwick is not a self-interested insurer. Accordingly, the Court applies the abuse of discretion standard to Sedgwick's denial of Plaintiff's STD claim.

Under the Plan, Plaintiff was eligible to receive STD benefits if he was "totally disabled" such that he "[could] not perform the Essential Duties of [his] own occupation." Docket no. 44-1 at 49. An Essential Duty "means the important tasks, functions and operations generally required by employers from those engaged in their usual occupation that cannot be reasonably omitted or modified." *Id.* at 55. In a Job Analysis Form prepared on October 17, 2014, a Major Account Executive, which was Plaintiff's position, is described as a "Field Sales Position." Docket no.

44-3 at 6–7. The position primarily requires sitting and standing, and the amount of lifting and carrying is described as occasionally "[s]edentary," which means up ten pounds for one to three hours per shift. *Id.* The tasks that are described as "continuous work" (five or more hours) for this position are "Inside Work" and "Depth Perception/Color Vision." *Id.* Otherwise, the position frequently involves sitting, standing, repetitive hand movements, computer viewing, and hearing. *Id.*

After Plaintiff ceased working for Charter as a Major Account Executive on April 30, 2015, he submitted his claim for STD benefits on May 1, 2015. Docket no. 44-3 at 166–69. Plaintiff submitted to Sedgwick an APS completed by his internist Dr. Friedrichs on May 20, 2015. *Id.* at 60–61. Dr. Friedrichs stated Plaintiff's complaints as chest pain, low energy, and limited exercise tolerance, and Dr. Friedrichs diagnosed Plaintiff with coronary artery disease, diabetes, and chronic obstructive pulmonary disease. *Id.* Dr. Friedrichs reported Plaintiff would be able to resume work after thirty-one days. *Id.*

Sedgwick initially determined it should deny Plaintiff's STD claim, stating that the "[m]edical information does not substantiate disability," "[t]here is no severity of condition, substantial change in condition or evidence of functional impairment," the "[p]ain is subjective," and "[i]t is not known why [Plaintiff] cannot perform his job duties at present." *Id.* at 149–50. The adjuster recognized that the APS stated that Plaintiff had chest pain, diabetes, and chronic obstructive pulmonary disease. *Id.* at 150. An attempt was reportedly made to call Dr. Friedrichs twice and a message was left, "looking for medical evidence to support [the] claim," but Sedgwick was unable to reach Dr. Friedrichs. *Id.* A second review found that, after reviewing the

APS, the APS did not "substantiate disability." *Id.* at 147. This information was relayed to Plaintiff in a June 8, 2015, letter, which stated in part:

> The medical documentation provided by Dr. Rita Friedrichs failed to support your claim for short term disability benefits. The documentation failed to provide objective medial evidence of functional impairment or indicate any emergent or escalated care was required during the requested period 05/01/2015 – Your Return to Work. The documentation provided failed to substantiate the severity of your current condition; therefore, your request for short term disability benefits is denied from 05/01/2015 – Your Return to Work

*Id.* at 43. The letter also provided Plaintiff with information on his right to appeal the denial. *Id.*

Plaintiff appealed his denial of STD benefits on February 11, 2016. Docket no. 44-2 at 38. Plaintiff attached medical records related to a stenting procedure, progress notes from Dr. Friedrichs, and a January 19, 2016, letter from Dr. Friedrichs. Sedgwick had two doctors review Plaintiff's appeal. First, Robert Bryg, M.D., a Board-certified cardiologist, issued a report that Plaintiff was not disabled from his occupation as of May 1, 2015. Docket no. 44-2 at 25–34. In his report, Dr. Bryg summarizes information from Plaintiff's provided medical records. Dr. Bryg states that there is no documented chest pain after February 2015, that Plaintiff "has a sedentary occupation which does not require significant physical activity that would create complications or further injury," and that by February 21, 2015, it is expected Plaintiff "would be recovered from the procedure and chest pain." *Id.* at 27. Dr. Bryg states the "need to assess someone as being unable to perform usual and customary work activities needs to be based upon clinical examination or abnormalities as opposed to self-reported subjective complaints" and the "records in this case do not include direct medical services provided to the claimant, and the records included did not provide significant clinical findings to support the claimant's condition as disabling." *Id.* Dr. Bryg concluded that Plaintiff should have recovered from his chest pain by

February 21, 2015, and that there was no medical evidence to support a claim of disability as of May 1, 2015. *Id.*

Second, Anu Davis, M.D., a Board-certified endocrinologist, issued a report similarly concluding that Plaintiff was not disabled from his occupation as of May 1, 2015. *Id.* at 18–22. Dr. Davis found that Plaintiff has a history of diabetes, hypertension, hyperlipidemia, obstructive sleep apnea, and coronary artery disease, and that Plaintiff's records "indicate poorly controlled diabetes and complaints of fatigue, poor concentration, and low energy." *Id.* at 20. Dr. Davis concluded, however, there was "a lack of clinical records to support disability due to the claimant's heart conditions" and the records "fail to document new impairments or physical or functional limitations [that] prevent the claimant from working his sedentary level job." *Id.*

Sedgwick issued a letter on April 8, 2016, denying Plaintiff's appeal, noting that it relied on reports by Drs. Bryg and Davis, and that it reviewed Plaintiff's medical records from "Timothy Dao, MD, Mithila Fadia, MD, Rita Friendrichs, MD, Son Pham, MD, Michael Phillips, MD, Andrew Slusher, MD, Tanya Gamblin, RN, Preciosa Jumamil, RN, and Myocardial Perfusion Imaging dated February 06, 2015 through January 19, 2016." *Id.* at 10. Sedgwick stated that "the medical information in the file [did] not support [Plaintiff's] inability to perform [his] occupation." *Id.*

The Court must analyze if Sedgwick's decision is supported by the administrative record. A decision is arbitrary only if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 828–29 (5th Cir. 1996)).

In *Gooden v. Provident Life & Accident Insurance Co.*, the plaintiff employee, who suffered from angina and coronary artery disease, sued the plan administrator for its denial of his claim for long term disability benefits. *Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329 (5th Cir. 2001). With his application for benefits, the plaintiff submitted an APS from his physician, medical records related to his treatment, and a letter from his physician dated after the plaintiff learned he was terminated from employment. *Id.* at 331. The plaintiff's physician believed that the plaintiff was "disabled and could not return to his previous employment." *Id.* The plan administrator, however, denied the plaintiff's claim, based on a review of the physician's records, the plaintiff's hospital records, the results of a recent stress test that the plaintiff underwent, and the administrator's medical staff's conclusion that the "objective medical findings" did not support the plaintiff's disability claim. *Id.* at 331–32. The Fifth Circuit held that the administrator did not abuse its discretion in denying the plaintiff's claim "because its decision is supported by the administrative record," which included the physician's APS, the recent stress test, the reviewer's recommendation to deny the claim, and information regarding the requirements of the plaintiff's job. All of this evidence taken together indicated that the plaintiff "was capable of fulfilling the duties of his job." *Id.* at 334.

In *Meditrust Financial Services Corp. v. Sterling Chemicals, Inc.*, the plaintiff was denied a claim for coverage for medical treatment under her employment plan following a head injury. *Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211 (5th Cir. 1999). Although the plaintiff alleged instances of bad faith and challenged the procedures used during the review process for medical coverage benefits, the Fifth Circuit held there was insufficient evidence to find the denial of benefits arbitrary and capricious, because the medical records were

reviewed six times and on each occasion the treatment requested was found not medically necessary, the denial letters expressly contained the basis for the denial, and the reviews were made "by a number of qualified physicians and based on all the hospital records." 168 F.3d at 215.

Similar to *Gooden* and *Meditrust*, Sedgwick denied Plaintiff's request for STD benefits following a review by a medical professional, and the denial was upheld on Plaintiff's appeal after further review by two additional medical professionals. During these reviews, the record indicates that those conducting the reviews based their decisions on the typical responsibilities of someone in Plaintiff's position and medical records that Plaintiff provided, and that Sedgwick ultimately denied coverage based on a review of the medical professionals' recommendations and the medical records Plaintiff supplied.

Plaintiff argues that Sedgwick abused its discretion because it based its denial solely on the fact that the APS failed to provide objective medical evidence of his disability, and that there is no such requirement for "objective medical evidence" stated in any of the relevant Plan documents. However, the fact that a plan administrator finds there is no objective medical evidence proving that a claimant would be prevented from performing job duties does not demonstrate that the administrator abused its discretion. *See Keller v. AT & T Disability Income Plan*, 664 F. Supp. 2d 689, 702 (W.D. Tex. 2009), *aff'd*, 481 F. App'x 86 (5th Cir. 2010); *see also Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 230–31 (5th Cir. 2004) (finding that an administrator's insistence that a claimant provide objective evidence of an allegedly disabling condition is not an abuse of discretion). Further, Plaintiff cannot show there was an abuse of discretion just because his physician might disagree with the conclusion of those professionals

conducting the reviews on Sedgwick's behalf. *See Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 603 (5th Cir. 1994) (finding no abuse of discretion where plaintiff argued the administrator gave insufficient weight to her doctors' opinions given the administrator reviewed all submitted medical records, employed independent medical consultants to evaluate the records and reach a conclusion, and reviewed the entire administrative record twice). Here, although Plaintiff argues that those reviewing his claim gave insufficient weight to Dr. Friedrichs's report, the record indicates that the medical professionals and Sedgwick reviewed all records that Plaintiff submitted to reach the conclusion, three times, to deny Plaintiff's claim for STD benefits.

Plaintiff argues that his position was improperly labeled as "sedentary," and that it should have actually been labeled as "light work." But as Defendants argue, there is no indication that Sedgwick's decision to deny Plaintiff STD benefits turned solely on this distinction. Although the reviewers acknowledged that Plaintiff's position was labeled as "sedentary" by Sedgwick in the Job Analysis Form, there is nothing in the administrative record to indicate that the reviewers based their decision solely on this distinction. Rather, as discussed above, the administrative record demonstrates that Sedgwick based its decision to deny Plaintiff STD benefits after reviewing the medical records that Plaintiff submitted in the context of the essential duties of Plaintiff's position, then concluding that the medical records did not demonstrate that he was unable to perform those duties.

Plaintiff also argues that Sedgwick failed to request and obtain additional medical records that he did not submit for the initial review. But Plaintiff carries the burden of proving he is entitled to the requested benefits. *See Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th

Cir. 1993). Sedgwick did not abuse its discretion merely because it did not seek additional records that Plaintiff did not submit. In any event, the administrative record indicates that the reviewing medical professionals attempted to contact Plaintiff's physician during their reviews, but their calls were not returned.

Also, Plaintiff's claim that Sedgwick failed to consider whether he was disabled due to his adjustment disorder, anxiety, and depression fails to show that Sedgwick abused its discretion. The administrative record indicates that the medical professionals reviewed the records that Plaintiff submitted, and there is no indication that Sedgwick denied Plaintiff's claim because it ignored potentially disabling diagnoses that Plaintiff's physician identified. Further, Plaintiff was not diagnosed with depression, anxiety, and adjustment disorder until June 19, 2015, seven weeks after his employment ended due to an alleged disability, and in that diagnosis, Dr. Friedrichs did not opine that Plaintiff was disabled from his position or could not perform the responsibilities of that position. Dr. Friedrichs did write a statement on January 1, 2016, that Plaintiff's adjustment disorder "directly impacted his ability to concentrate at work and is responsible for his poor productivity in recent months." But the administrative record indicates that the medical professionals were provided and reviewed these documents, along with all other medical records that Plaintiff submitted, and Sedgwick denied Plaintiff's claim based on a review of all of this information. Plaintiff cannot demonstrate Sedgwick abused its discretion just because a select set of medical records show his physician opined that symptoms of mental illness affected his work productivity.

As discussed above, the plan administrator is entitled to deference, and there is nothing in the record to suggest that there was an abuse of discretion after Sedgwick reviewed an extensive

record and denied Plaintiff's claim. Despite Plaintiff's arguments, the administrative record indicates that Sedgwick based its decision to deny Plaintiff's claim for STD benefits on the medical records Plaintiff provided, the requirements of Plaintiff's position, and the recommendations of the reviewing medical professionals, both in the initial review and upon Plaintiff's appeal. Plaintiff fails to show that Sedgwick's decision was made without a rational connection between the known facts and the decision to deny STD benefits. Accordingly, there is no genuine dispute of material fact that Sedgwick did not abuse its discretion when it denied Plaintiff's claim for STD benefits.

### B. Plaintiff's Claim Against Defendant Charter

Plaintiff argues that the Court should review Charter's denial of his claim for STD benefits *de novo* because unlike Sedgwick, Charter did not have discretionary authority to determine the payment of STD benefits, and that the Court should enter summary judgment in his favor. Charter argues the Court should review the denial of STD benefits under an abuse of discretion standard because Charter delegated sole discretionary authority under the Plan to Sedgwick to determine STD benefits, leaving Charter with no authority to make STD benefit determinations. Charter argues it is entitled to summary judgment because Sedgwick did not abuse its discretion in denying Plaintiff's STD claim.

Where a claims administrator has sole discretionary authority to determine benefit claims, such a decision is reviewed for abuse of discretion, not under a *de novo* standard of review. *See Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992). In the present case, the Disability Program Provisions states that for a STD claim, the "Claims Administrator is the claims fiduciary with sole authority to determine benefit claims under the terms of the Disability

Program." Docket no. 44-1 at 51. It has been established that Sedgwick is the Claims Administrator for STD claims.

In *Rusch v. United Health Group Inc.*, the plaintiff sought disability benefits under her employer's disability benefits plan and brought an action against her employer after her claim for benefits was denied. *Rusch v. United Health Grp. Inc.*, No. 2:12-CV-00128, 2013 WL 3753947 (S.D. Tex. July 15, 2013). The employer's plan "delegated responsibility and authority for administering claims to an unrelated third-party administrator" that had the "exclusive right and discretion to administer the Plan's benefits." *Id.* at *6–7. Despite the fact that this plan listed the employer as the "Plan Administrator," the court applied an abuse of discretion for the claim alleged against the plaintiff's employer because the plan made it clear "that eligibility determinations are made by an independent Claims Administrator." *Id.* at *7.

Similarly, in *Coronado v. SBC Communications, Inc.*, the plaintiff brought action against her employer after her disability claim was denied. *Coronado v. SBC Commc'ns, Inc.*, No. SA-04-CA-0426-RF, 2005 WL 2137912, at *1 (W.D. Tex. Aug. 30, 2005), *aff'd*, 193 F. App'x 364 (5th Cir. 2006). Because the employer "delegated complete authority concerning the award of benefits" to an independent third party administrator, the court applied an abuse of discretion standard in reviewing the plaintiff's claim against her employer. *Id.* at *2.

In this case, Plaintiff acknowledges that Sedgwick was the Administrator of the STD Plan and had "sole authority to determine benefit claims under the Disability Program." Docket no. 62 at 4. There is no dispute that Sedgwick, and not Charter, had sole authority to approve or deny Plaintiff's STD claim. Accordingly, Plaintiff's claim against Charter for the denial of STD benefits must be reviewed for abuse of discretion. As analyzed in depth above, the Court finds

that there is no genuine dispute of material fact that Sedgwick did not abuse its discretion when it denied Plaintiff's claim for STD benefits, and thus, Charter is entitled to summary judgment on Plaintiff's claim against it for the denial of benefits.

## II. Failure to Provide Plan Documents

Charter argues it is entitled to summary judgment on Plaintiff's claim that Charter allegedly failed to provide requested Plan documents because (1) Charter is not subject to the regulation underlying Plaintiff's claim for damages, (2) the record shows that Sedgwick responded to Plaintiff's requests, and (3) Plaintiff cannot establish that Charter acted in bad faith or that he suffered prejudice. Plaintiff argues in his Response that the Court should enter summary judgment in his favor on this claim.

### A. Applicability of Law to Plaintiff's Claims

As to Charter's first point on the applicability of the statute, the point is now moot. Charter initially argued that the regulation Plaintiff cited in his Complaint as a basis for liability, 29 C.F.R. § 2560.503-1, imposes requirements on the "employee benefit plan," not the plan administrator, thereby imposing no liability on Charter as the Plan Administrator. After Charter filed its motion for summary judgment, the Court granted Plaintiff's Unopposed Motion for Leave to File First Amended Complaint. Docket no. 55. In his First Amended Complaint, Plaintiff removes the reference to 29 C.F.R. § 2560.503-1 and alleges that Charter failed to timely provide him with requested Plan documents in violation of 29 U.S.C. § 1024(b)(4), which results in statutory penalties under 29 U.S.C. § 1332(c)(1). Docket no. 56 at 6–7. Thus, Charter's argument about the applicability of 29 C.F.R. § 2560.503-1 is now moot.

### B. Charter's Claim that Sedgwick Responded to Plaintiff's Requests

Charter next argues that Sedgwick sent Plaintiff all documents relevant to his claim. Plaintiff argues that his requests were not met because he did not timely receive Plan documents. Under 29 U.S.C. § 1024(b)(4), plan administrators must, "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary [ ] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). If a plan administrator fails to comply with this requirement within thirty days after the request is made, courts have discretion to impose a penalty of up to $100 per day. 29 U.S.C. § 1132(c)(1)(B)

Plaintiff alleges that on June 30, 2015, September 2, 2015, and September 24, 2015, his attorney sent letters to Sedgwick requesting "all plan documents and all documents, records, and other information relevant to [Plaintiff's] claim for short-term disability benefits." Docket no. 62 at 13. Charter states that Sedgwick sent Plaintiff a letter on July 8, 2015, that enclosed "the documents on file throughout the life of the claim." Docket no. 44-3 at 29. Charter states that Sedgwick sent a similar letter to Plaintiff's attorney on October 1, 2015. *Id.* at 21. Plaintiff, however, states that despite Sedgwick sending out these letters and described documents, these documents "did not include any Plan documents." Docket no. 62 at 23. Plaintiff argues that the fact that he may have received a copy of records related to his claim does not absolve Charter of liability for its alleged refusal to provide Plan documents that Plaintiff requested. Plaintiff states that his attorney then sent Charter a written request for Plan documents on May 12, 2016, which was received on May 16, 2016, but that Charter ignored his request. *Id.* at 13. Plaintiff states that Sedgwick finally produced certain Plan documents on July 11, 2017, namely the Plan

Information, the Highlights brochure, and the Disability Provisions, thirteen months after Charter's deadline to produce these documents expired. *Id.* at 13–14. Plaintiff further states that neither Defendant has produced Plan documents entitled the Overall Plan and the Services Agreement, both of which Plaintiff states Charter now asserts are documents that make up the STD Plan. *Id.* at 14.

Charter's evidence indicates that Sedgwick's letters and relevant documents sent on July 8, 2015, and October 1, 2015, were a timely response to Plaintiff's request for documents. However, there is at least a genuine dispute of material fact that the documents sent on these dates did not fully fulfill Plaintiff's request for "all plan documents" given that some documents that may fall under that request were not received until July 2017, and others were potentially never received. Accordingly, Charter is not entitled to summary judgment based on the claim that Sedgwick responded to and met Plaintiff's request for Plan documents.

### C. Charter's Claim that Plaintiff Cannot Establish Bad Faith and Prejudice

Charter finally argues that Plaintiff cannot establish that it acted with bad faith in meeting his request for Plan documents or that he suffered any prejudice. Plaintiff argues that the Court need not find there was prejudice, or in the alternative, that he did suffer prejudice and Charter acted with bad faith such that the Court should order Charter to pay a penalty.

The imposition of a statutory penalty under 29 U.S.C. §1132(c) is within the discretion of the district court. *Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf Inc.*, 637 F.2d 357, 362 (5th Cir. 1981). To make this determination, courts consider: "(1) bad faith by the administrator, (2) the length of delay, (3) the number of requests, (4) the documents withheld, and (5) the existence of any prejudice to the plan participant." *Thomason v. Metro. Life Ins. Co.*,

Civ. Ac. No. 3:14-CV-0086-P, 2016 WL 791044, at *7–8 (N.D. Tex. Feb. 25, 2016) (citing *Romero v. SmithKline Beecham*, 309 F.3d 113, 120 (3d Cir. 2002); *Friz v. ADS Power Res., Inc.*, Civ. Ac. No. 3:00–CV–1116–D, 2001 WL 732197, at *4 (N.D. Tex. June 27, 2001)). Although a plaintiff is not required to show he was prejudiced to be entitled to penalty damages under the statute, the Fifth Circuit has suggested that a court may consider it in exercising its discretion. *Godwin v. Sun Life Assur. Co. of Canada*, 980 F.2d 323, 327 (5th Cir. 1992).

Courts in the Fifth Circuit have denied requests for penalty damages if the plaintiff does not allege bad faith by the defendant or show that he has been somehow prejudiced. *See, e.g.*, *Godwin*, 980 F.2d at 327 (finding the district court's decision to not award penalty damages because plaintiff was not prejudiced was not an abuse of discretion); *Shelby County Health Care Corp. v. Genesis Furniture Indus., Inc.*, 100 F. Supp. 3d 577, 585 (N.D. Miss. 2015); *Mouton v. Mobil*, No. CIV. A. H-00-1403, 2001 WL 963957, at *10–11 (S.D. Tex. June 18, 2001).

In *Mouton*, the plaintiff argued he was prejudiced by the defendant's failure to provide plan documents because he was "'hampered' in his ability to prepare for the lawsuit," experienced "frustration and aggravation," and was "prevented from knowing the reason for denial of benefits." *Moulton*, 2001 WL 963957, at *10. The court, however, concluded he was not prejudiced because the documents did not contain information that "would have materially added to the Administrator's explanation for the denial of benefits" and the documents were provided to the plaintiff early in the lawsuit. *Id.* at *11. Thus, the court declined to award penalty damages. *Id.*

Similarly, the Plan documents that Plaintiff claims were not sent to him when Sedgwick initially responded to his requests would not have provided Plaintiff a more detailed explanation

as to why his claim for STD benefits was denied. Also, Plaintiff admits that these three requests made in 2015 "are irrelevant to his section 1132(c) claim against Charter." Docket no. 62 at 28. Plaintiff only argues that Charter's failure to timely submit the documents that Plaintiff requested on May 12, 2016, entitle him to penalty damages. But as Charter argues, this May 12, 2016, request came long after Plaintiff's initial claim for STD benefits and subsequent appeal were submitted, evaluated, and denied. Although Plaintiff claims that he was prejudiced by Charter's delay to provide Plan documents, he only alleges that he suffered prejudice "in the form of distress and frustration with his ability to obtain the plan documents." *Id.* at 26. But as in *Moulton*, despite claims of frustration and distress, Plaintiff fails to provide any evidence that the delay in receiving certain Plan documents prevented him from knowing the reason for the denial of STD benefits, or any other specific harm he suffered. This is made clear by the fact that the denial letter identified Sedgwick's role in the determination, defined and explained the requirements for STD benefits, and specifically explained why Sedgwick denied Plaintiff's claim. Docket no. 44-3 at 42–44.

Further, Plaintiff fails to provide any evidence that Charter acted with bad faith in providing the Plan documents. Plaintiff claims Charter acted in bad faith because its failure to provide Plan documents in a more timely fashion showed a "reckless, if not deliberate indifference to its responsibilities." Docket no. 62 at 28. But Plaintiff fails to provide any actual evidence of bad faith just because Sedgwick, rather than Charter, provided certain Plan documents, or why another document was provided after the Court ordered such at a status conference.

As discussed above, the imposition of statutory penalties under 29 U.S.C. § 1332(c) is within the discretion of the Court. Plaintiff has not shown that he was prejudiced by Charter's alleged failure to respond to the one request for Plan documents on May 12, 2016, nor that Charter acted with bad faith. The Court exercises its discretion to decline to award penalty damages under 29 U.S.C. § 1132(c). To the extent that Plaintiff attempts to move for summary judgment on the imposition of penalty damages against Charter, Plaintiff's motion is denied. Charter's motion for summary judgment on its alleged failure to provide Plan documents is granted.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant Charter's Motion for Summary Judgment (Docket no. 44), GRANTS Defendant Sedgwick's Motion for Summary Judgment (Docket no. 45), and DENIES Plaintiff's Motions for Summary Judgment (Docket nos. 62, 63). Accordingly, Plaintiff's claims are hereby DISMISSED WITH PREJUDICE. The Clerk is directed to issue a Judgment in favor of Defendants, and that Plaintiff takes nothing on his claims. Defendants may submit its Bill of Costs within 14 days in the form directed by the Clerk should it desire to pursue these costs.

It is so ORDERED.

SIGNED this 30th day of April, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE